**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|  |  |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | |
| **Plaintiff,** | |
| v. | Case No. 2:25-cv-02272-HLT-JBW |
| SHARMEN MCCOLLUM, et al., | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

This is an insurance dispute. Plaintiff is an insurance company who provided underinsured motorist ("UIM") coverage under its policy. Defendants are five individuals or their estates who were involved in a tragic vehicle accident. The tortfeasor—the driver of the vehicle that collided with Defendants—had coverage that provided only $100,000 per occurrence, which has been paid to Defendants but is far less than Defendants' damages. Defendants therefore sought UIM coverage from Plaintiff, the insurer who covered Defendants' vehicle. The UIM benefits under Plaintiff's policy are $250,000 per person or $500,000 per occurrence. The availability of UIM coverage is not in dispute. The only dispute in this case is the amount of UIM benefits that are owed by Plaintiff. Plaintiff argues that amount is $400,000, which represents the UIM per occurrence coverage limit minus the $100,000 paid by the tortfeasor's insurer. Defendants argue the full $500,000 per occurrence coverage limit is owed if the benefits are calculated on a per person basis.

Plaintiff filed a motion for summary judgment on largely undisputed facts. Doc. 13. The Court grants Plaintiff's motion. The policy, which provides for coverage in an amount equal to the per occurrence limit minus the amount paid by a tortfeasor, does not conflict with or diminish the

mandatory UIM coverage required by Kansas law, nor does it conflict with the cases interpreting that law. The amount of benefits owed is $400,000.

## I.    BACKGROUND[1]

Defendants Sharmen McCollum, Robert McCollum, Jonathan Wright, Gary Wright, and Alma Wright were occupants in a 2004 Toyota Sienna that collided with a vehicle driven by non-party Richard Jackson on October 12, 2024. PSOF 1. Alma Wright and Robert McCollum were killed. PSOF 2. Gary Wright and Sharmen McCollum suffered significant injuries. *Id.* Jonathan Wright, the driver of the Toyota Sienna, was not injured. *Id.*; DSOF 1.

Jackson had an insurance policy issued by Progressive Insurance with bodily injury coverage of $50,000 per person and $100,000 per occurrence. PSOF 3. Progressive tendered the $100,000 per occurrence limit to Defendants as part of a settlement. PSOF 4. Those proceeds have not been allocated among Defendants. PSOF 5. But no one person is to receive more than $50,000 inclusive of all liens under the terms of the settlement. *Id.*

The Toyota Sienna was insured under a policy issued by Plaintiff Auto-Owners Insurance Company to Gary Wright and Alma Wright. PSOF 6. The policy includes the following provision:

> a.  The limit of our liability for Uninsured Motorist Coverage in any one occurrence shall be as follows:
>
> (1) Our payment to <u>any one injured person</u> shall not exceed the smallest of the following:
>
> (a) the "each person" Limit of Liability stated in the Declarations for Uninsured Motorist Coverage;
>
> (b) the difference between such "each person" limit of liability and the amount paid to the injured person by or for any person or organization which may be legally responsible for the bodily injury sustained by such injured person; or

---

[1]  The following facts are undisputed for purposes of summary judgment and are considered in a light most favorable to the non-moving party. "PSOF" refers to the facts listed in Plaintiff's motion. Doc. 14. "DSOF" refers to the additional facts in Defendants' response. Doc. 22.

> (c) the amount of damages sustained but not recovered by the injured person.
>
> (2) Subject to the provisions of 4.a.(1) above, our payment to <u>all injured</u> persons shall not exceed the smallest of the following:
>
> > (a) the "each occurrence" Limit of Liability stated in the Declarations for Uninsured Motorist Coverage;
> >
> > (b) <u>the difference between such "each occurrence" limit of liability and the total amount paid to all injured persons by or for any persons or organization which may be legally responsible for the bodily injury sustained by such injured persons</u>; or
> >
> > (c) the total amount of damages sustained but not recovered by all injured persons.

DSOF 10; *see also* Doc. 5 at 28 (bolding in original omitted; underlining added). The policy had UIM coverage limits of $250,000 per person and $500,000 per occurrence. PSOF 6. The policy insured vehicles garaged in Kansas and is governed by Kansas law. PSOF 7. The policy for the Toyota Sienna provided "comprehensive" coverage. DSOF 2.

Defendants seek $500,000 in UIM benefits under the policy. PSOF 8. Plaintiffs tendered $400,000 in UIM benefits to Defendants. PSOF 9. But Defendants rejected it. *Id.* For purposes of summary judgment, Plaintiff stipulates that Gary Wright and Sharmen McCollum suffered individual compensatory damages of more than $250,000 each, and that compensatory damages for the wrongful death of Alma Wright and Robert McCollom exceed $250,000 each. PSOF 12.

## II.    STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that

genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

## III.    ANALYSIS

Plaintiff moves for summary judgment on the amount of UIM coverage owed. Doc. 13. Plaintiff argues the amount owed is $400,000; Defendants say $500,000. Neither party seems to dispute that the policy language calculates the UIM benefits at $400,000, which is "the difference between such 'each occurrence' limit of liability [$500,000] and the total amount paid to all injured persons by or for any persons or organization which may be legally responsible for the bodily injury sustained by such injured persons [$100,000]." Doc. 5 at 28; PSOF 10. The only issue is whether this provision comports with the law in Kansas regarding mandatory UIM coverage, or whether Kansas law requires a different calculation to reach the amount of UIM coverage.

The statute establishing mandatory UIM coverage is K.S.A. § 40-284(b). It states:

> Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.

This provision is mandatory under Kansas law. *E.H. v. Auto. Club Inter-Insurance Exch.*, 447 P.3d 382, 387 (Kan. Ct. App. 2019). Its purpose is to ensure that a person covered under a standard automobile insurance policy has a right against his own insurer equal to what an insured would

have against an uninsured or underinsured tortfeasor. *Id.* (citing *O'Donoghue v. Farm Bureau Mut. Ins. Co.*, 66 P.3d 822, 828 (Kan. 2003)). Where it applies, the statute is "to be considered a part of every automobile policy in this state." *Long v. St. Paul Fire & Marine Ins. Co.*, 589 F.3d 1075, 1079 (10th Cir. 2009). An insurance policy only controls to the extent it does not conflict or diminish this mandatory coverage. *E.H.*, 447 P.3d at 391. Thus, the UIM provision under the policy is only enforceable if it comports with K.S.A. § 40-284(b). Although the underlying policy of the uninsured and underinsured statutes is to provide broad protections to insured parties, "this is a general statement of policy, and must yield to specific statutory requirements." *Long*, 589 F.3d at 1079-80.

### A.    The policy does not conflict with the statute.

"The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained." *O'Donoghue*, 66 P.3d at 825; *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."). Thus, the Court starts with comparing the plain language of K.S.A. § 40-284(b) against the policy to see whether the two conflict or whether the policy diminishes mandatory coverage.

The statute and the policy both appear to provide for the same amount of UIM coverage. K.S.A. § 40-284(b) requires that policies include provisions that allow insured parties to recover from their insurer an amount of damages equal to the limits of UIM coverage "to the extent such coverage exceeds the limits of the bodily injury coverage" in the tortfeasor's policy. The policy states that the amount of UIM coverage available to all injured persons shall not exceed the smallest of (a) the per occurrence limit, (b) the difference between the per occurrence limit and the amount paid by a tortfeasor, or (c) the total damages sustained. Doc. 5 at 28. Although these

provisions address slightly different concepts, the policy does not diminish what is required by the statute. Under all contingencies, an insured party could recover an amount "equal to the limits" of the UIM coverage "to the extent such coverage exceeds the limits" of the tortfeasor's coverage. *See* K.S.A. § 40-284(b).[2]

**B.      The Kansas Supreme Court's opinion in *O'Donoghue* confirms this result.**

Caselaw confirms that the policy in this case does not conflict with or diminish the coverage mandated by K.S.A. § 40-248(b). The primary case relied on by both parties is *O'Donoghue*. O'Donoghue was a passenger in a car involved in a single-car accident. 66 P.3d at 825. O'Donoghue and one other passenger died, and a third passenger was injured. *Id.* The three claimed against the driver's insurance policy, which had a per person limit of $50,000 and a per occurrence limit of $100,000. The tortfeasor's insurer paid the $100,000 per occurrence limit. *Id.* O'Donoghue's share of the settlement was $25,000. *Id*. O'Donoghue's estate then claimed against her own policy, which had UIM coverage limits of $100,000 per person and $300,000 per occurrence. *Id.* The dispute was whether the amount of UIM coverage available was $75,000 ($100,000 UIM per person limit minus the $25,000 paid by the driver's insurer) or $50,000 ($100,000 UIM per person limit minus $50,000 per person limit of the driver's policy). *Id.* The issue in the case—"the amount of UIM coverage where that coverage exists"—was one of first impression in Kansas. *Id.* at 826.[3]

---

[2]    Although total damages sustained could be less than the UIM limit, in such a situation an injured party would be fully compensated, and the purpose of the statute would be served. *See McLean v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 493 P.3d 968, 973 (Kan. Ct. App. 2021) (explaining that K.S.A. § 40-284 "should be liberally construed to provide broad protection to the insured against all damages resulting from bodily injuries sustained by the insured that are caused by an automobile accident where those damages are caused by the acts of an uninsured or underinsured motorist" (emphasis added)).

[3]    Whether UIM coverage exists is not disputed in this case.

The Kansas Supreme Court in *O'Donoghue* relied extensively on the lower appellate court's "interpretation of [K.S.A. § 40-284(b)] when dealing with the amount of UIM coverage where it has been established that such coverage exists." 66 P.3d at 827-28 (quoting *O'Donoghue v. Farm Bureau Mut. Ins. Co.*, 49 P.3d 22, 27 (Kan. Ct. App. 2002)). Specifically, the <u>first part</u> of K.S.A. § 40-284(b) mandates "UIM coverage which enables the insured to collect from his or her own insurance company the amount of money that the insured would have recovered from the tortfeasor, if the tortfeasor had been carrying the same liability limits as the insured." *Id.* at 827 (quoting *O'Donoghue*, 49 P.3d at 27). But the <u>second part</u> of K.S.A. § 40-284(b) prevents a claimant from collecting the full UIM limits <u>in addition to amounts collected from the tortfeasor</u>. *Id.* (citing *O'Donoghue*, 49 P.3d at 27). Specifically, "the statute qualifies the UIM recovery to the extent such UIM coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle." *Id.* (quoting *O'Donoghue*, 49 P.3d at 27) (citation modified). *O'Donoghue* continued:

> It is noteworthy that the statute speaks to the UIM 'coverage' exceeding the tortfeasor's 'coverage.' This connotes that <u>the amount available for recovery</u> under the tortfeasor's policy, considering both the per person and per occurrence limits and the number and respective damages of all claimants, <u>is deducted from the amount which would have been available to the UIM claimant under the same scenario if the tortfeasor had carried the higher UIM limits to arrive at the amount which the UIM insurer must pay its insured.</u> The qualifying portion of the statute does not create a 'per person limits-to-per person limits' limitation rule, but rather <u>it provides for a 'coverage-to-coverage' comparison</u>. Because of the tortfeasor's inadequate per occurrence limit, the tortfeasor's coverage available to O'Donoghue was $25,000. The amount that was payable under the tortfeasor's policy limits ($25,000) is deducted from the amount that would have been paid under the UIM policy limits ($100,000).

*Id.* at 827-28 (quoting *O'Donoghue*, 49 P.3d at 27) (emphasis added). The Kansas Supreme Court found this interpretation "persuasive and consistent with the remedial nature of [K.S.A. § 40-284(b)]." *Id.* at 828.

The issue in *O'Donoghue* was whether the amount of UIM damages should be reduced by the limits of the tortfeasor's policy or by the amount actually received by the injured party. As discussed, the latter calculation prevailed. Defendants argue that "*O'Donoghue* implicitly held the amount of UIM benefits a claimant is eligible to recover is determined on an individual basis." Doc. 22 at 6. A per person calculation is what Defendants advocate. This would require an assumption that each injured Defendant receives an equal share of the $100,000 tortfeasor settlement ($20,000 each). Because the injury of each Defendant exceeds $250,000, the $20,000 settlement amount would be subtracted from the per person limit of $250,000. This would entitle each Defendant to $230,000. But the per occurrence limit would then cap the total UIM award at $500,000.[4]

In support of this calculation, Defendants rely on the statement in *O'Donoghue*'s syllabus that "the underinsured motorist provider is responsible for paying the difference between the insured's pro rata share of the settlement with the tortfeasor and the insured's total amount of damages up to the insured's underinsured motorist limits." 66 P.3d at 824 Syl. ¶ 6. But it's not clear that *O'Donoghue* was stating a rule to be applied in all cases versus just explaining how it was deciding the case and facts before it. *O'Donoghue* was factually different from this case in that only one of three injured parties who collected from the tortfeasor was seeking UIM benefits. The other injured parties were not seeking UIM benefits under O'Donoghue's policy. The Kansas

---

[4]    It's not clear that Jonathan Wright suffered any injuries, let alone in excess of $250,000. But even assuming he would not factor in the calculus, the damages of just the four others would reach the same result.

Supreme Court was only tasked with calculating the UIM benefits owed to one claimant, and thus it made sense to consider only the pro rata share of the tortfeasor settlement paid to that person in light of the per person policy limit.[5] By contrast, here there are five individuals seeking the same UIM benefits from Plaintiff. This would necessarily warrant a calculation using the per occurrence limit.[6]

Defendants also argue that *O'Donoghue* "directly addressed the issue in the case at bar and held the full per occurrence limit of the relevant UIM policy would be recoverable in an action by multiple UIM claimants whose damages exceed their recovery." Doc. 22 at 8. The quote they rely on from *O'Donoghue* to argue for the full $500,000 is: "For instance, if there had been four UIM claimants, each with $100,000 in damages, the $300,000 UIM per occurrence limits would have been prorated, based on actual damages, rather than simply paid to the first persons to file a claim." 66 P.3d at 827 (quoting *O'Donoghue*, 49 P.3d at 27). But as Plaintiff correctly points out, that statement was made in the context of discussing the <u>first part</u> of K.S.A. § 40-284(b). The opinion

---

[5]  Defendants argue that calculating UIM benefits on an individual basis is necessary because "UIM coverage is first party coverage and by its very nature must be calculated on an individual basis due to the inherent possibility that multiple individuals within the same vehicle are covered under different UIM policies." Doc. 22 at 7. Certainly, if multiple individuals are covered under <u>different</u> UIM policies, calculating UIM benefits on an individual or pro rata and per person basis would make sense. But that is not the situation here. Defendants also argue that giving a UIM carrier a collective credit for multiple injured parties is what occurred in *Taylor v. Allstate Indemnity Co.*, 43 P.3d 260 (Kan. Ct. App. 2002), and *O'Donoghue* disagreed with *Taylor*, *see O'Donoghue*, 66 P.3d at 830. But *Taylor* applied a "limits to limits" calculation, *Taylor*, 43 P.3d at 261, which is what *O'Donoghue* rejected in favor of a "coverage to coverage" calculation, *O'Donoghue*, 66 P.3d at 827-28. *O'Donoghue* did not otherwise address a global settlement with multiple UIM claimants. The Court further notes that there is perhaps some confusion in this case because the math is the same whether you apply an incorrect "limits to limits" calculation ($500,000 in UIM per occurrence limit minus $100,000 in per occurrence limit under Jackson's policy) or a correct "coverage to coverage" calculation ($500,000 in UIM per occurrence limit minus the $100,000 in total coverage paid under Jackson's policy). But this does not change the legal analysis.

[6]  The "pro rata" statement in *O'Donoghue*'s syllabus seems to come from *Jones v. Automobile Club Inter-Insurance Exchange*, 981 P.2d 767, 768 (Kan. Ct. App. 1999). The facts in *Jones* were similar to *O'Donoghue*, both of which are dissimilar to this case. In *Jones*, three people in a car were injured by a tortfeasor and received inadequate payouts from the tortfeasor. *Id.* Only one of those three then sought UIM benefits. *Id.* Here, by contrast, all five Defendants (all of whom are entitled to payment under the settlement with Jackson) seek the same UIM benefits. The Court therefore doesn't read the "pro rata" statement in *Jones* and approved by *O'Donoghue* as setting a rule clearly applicable in this case.

goes on to state: "However, if [K.S.A. § 40-284(b)] contained no further provision, O'Donoghue could collect $100,000 under the UIM, in addition to the $25,000 already collected from [the tortfeasor's] insurer. Therefore, the statute qualifies the UIM recovery to the extent such UIM coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle." *Id.* (citation modified). *O'Donoghue* went on to agree that the amount paid by the tortfeasor must be deducted from the UIM policy limit. *Id.*[7] The same is true here, and the $100,000 paid by the tortfeasor must be deducted from the total coverage provided under the UIM policy ($500,000). Again, because multiple claimants are involved, the per occurrence limit would apply.

**C.     A more recent Kansas Court of Appeal's decision supports Plaintiff's position.**

In *E.H.*, a more recent opinion, E.H. was injured in a three car accident along with her parents and two siblings. 447 P.3d at 385. The tortfeasor's policy had a $50,000 per occurrence limit. *Id.* E.H. and her family received $25,000 from that, $10,000 of which went to E.H.'s father and $12,000 went to E.H. *Id.* at 385-86.[8] E.H.'s father collected $40,000 under his UIM policy, which had a $50,000 per person and $100,000 per occurrence limit. *Id.* at 386. The issue in the case was the amount of UIM benefits available to E.H. *Id.* E.H. contended she was entitled to $38,000 ($50,000 per person UIM limit minus the $12,000 from the tortfeasor). The insurance

---

[7]   Defendants also state that "[t]he effect of *O'Donoghue* was to allow the UIM claimant to globally recover their per person UIM limit, regardless of the share of the tortfeasor's liability limits that they ended up with." Doc. 22 at 14 (citing *O'Donoghue*, 66 P.3d at 825, 830). It's unclear what holding in *O'Donoghue* Defendants are referring to here. In *O'Donoghue*, it was undisputed that the tortfeasor settlement reduced the amount of UIM benefits in some degree. It was just the method of calculating that reduction that was at issue The overall total amount O'Donoghue's estate ultimately received was $100,000 ($25,000 from the tortfeasor plus $75,000 in UIM coverage). This was true even though it was undisputed that O'Donoghue's damages exceeded $100,000. *O'Donoghue*, 66 P.3d at 825. To the extent Defendants are arguing that *O'Donoghue* authorized an injured party to obtain more than the UIM coverage limits in total, *O'Donoghue* did not go so far.

[8]   The remainder of the family's portion of settlement went to E.H.'s mother and siblings. The other half of the tortfeasor's payout went to the estate of a person in a third vehicle who died. *E.H.*, 447 P.3d at 386.

company argued there was only $50,000 <u>total</u> available UIM benefits ($100,000 UIM per occurrence limit minus the $50,000 per occurrence limit of the tortfeasor's policy), and $40,000 of that had gone to E.H.'s father, leaving only $10,000 available to E.H. *Id.* at 386-87. The trial court awarded E.H. $38,000 in UIM benefits. *Id.* at 387. But the Kansas Court of Appeals reversed, finding that E.H. was only entitled to $35,000. *Id.* at 385.

The Kansas Court of Appeals relied heavily on *O'Donoghue*. It rejected the limits-to-limits approach advocated by the UIM insurer. *Id.* at 388. But it also rejected the calculation E.H. sought, which is what Defendants advocate for here. *Id.* at 386 ("E.H. claimed she was entitled to $38,000 in UIM coverage based on the difference between her $12,000 pro rata share from the GEICO settlement and the $50,000 per person UIM limit."). This was because awarding $38,000 to E.H. would allow her "family to ultimately obtain a greater recovery than that allowed by the $100,000 UIM per occurrence limit." *Id.* at 389; *see also id.* at 390.[9] Finding no definitive answer in the caselaw, *E.H.* ultimately concluded that the total amount of available UIM benefits available to E.H. was found by subtracting from the per occurrence UIM limit ($100,000) the total amounts received by the family from the tortfeasor ($25,000) along with E.H.'s father's recovery under the UIM policy ($40,000).[10] *Id.* at 388-89. This left $35,000 for E.H., which is what the court awarded. *Id.*

Applying the logic of *E.H.* to this case, Defendants are entitled to $400,000 from Plaintiff, which represents the UIM per occurrence limit of $500,000 minus the total received from the

---

[9] The family recovered $25,000 from the tortfeasor, and E.H.'s father received $40,000 in UIM benefits. If E.H. was awarded $38,000, the total received by the family would've been $103,000, which is more than $100,000 per occurrence limit under the UIM policy.

[10] Defendants argue that *E.H.* is factually distinct from this case because the court was only adjudicating the amount of benefits available to one individual. Doc. 22 at 8-9. But although E.H. was the only plaintiff in that case, the court specifically considered what amount was due to her in light of other claimants on the same UIM policy (E.H.'s father and potentially her mother and siblings). *See E.H.*, 447 P.3d at 390.

tortfeasor ($100,000). This is also what the policy provides for: "the difference between such 'each occurrence' limit of liability [$500,000] and the total amount paid to all injured persons by or for any persons or organization which may be legally responsible for the bodily injury sustained by such injured persons [$100,000]." Doc. 5 at 28.

### D.    Another court in the District of Kansas recently reached the same result.

This outcome is also consistent with a recent District of Kansas opinion addressing a similar factual scenario. In *Progressive Northwestern Insurance Company v. Edwards*, 2026 WL 560246 (D. Kan. 2026), a tortfeasor caused an accident that injured a husband and wife. The husband suffered $261,000 in damages and the wife suffered $5.3 million in damages. *Id.* at *1. The tortfeasor had a policy with a $250,000 limit, which was paid in full to the couple. *Id.* The husband had UIM coverage with a $300,000 combined single limit for each accident. *Id.* at *2.[11] The UIM policy, like the one here, reduced UIM coverage by all sums paid by or on behalf of a tortfeasor. *Id.* The couple argued they were nevertheless entitled to the full $300,000 in UIM coverage. *Id.*

The court found that the "UIM policy language, consistent with K.S.A. § 40-284(b), reduces the Edwards' recovery by the amount they received from [the tortfeasor]." *Id.* The couple was only permitted to "recover the difference between their recovery from [the tortfeasor] ($250,000) and their total damages up to their UIM combined limit ($300,000)." *Id.* at *3. The court specifically rejected a reading of *O'Donoghue* that "an insured can collect her entire UIM limit if her total damages minus her recovery from the tortfeasor is greater than her UIM limit" because it would allow injured parties to recover more than the total coverage under the UIM

---

[11]  To the extent the existence of a combined single limit distinguishes *Progressive* from this case factually, the outcome remains consistent with the outcome here and the application of *O'Donoghue* and *E.H.* discussed above. The Court notes that *Progressive* was issued after the motion in this case was fully briefed, and thus the parties have not had the opportunity to analyze it.

policy. *Id.* This was counter to the plain language of K.S.A. § 40-284(b), which requires insurers to provide coverage that enables an insured party to recover "the amount of money that the insured would have recovered from the tortfeasor, if the tortfeasor had been carrying the same liability limits as the insured." *Id.* at *4 (quoting *O'Donoghue*, 66 P.3d at 827). The court concluded: "*O'Donoghue* and *E.H.* show that UIM coverage ensures that the Edwards receive $300,000 either wholly from [the tortfeasor], wholly from Progressive, or combining their recovery from both." *Id.* A $400,000 UIM payout achieves a similar result here because Defendants' combined recovery will be the full $500,000 limit of the UIM policy.

### E.     This outcome is consistent with Kansas law.

The Court recognizes the tragic nature of the accident and the considerable damages and loss suffered by Defendants. But this outcome is not unjust. Had Jackson been insured at the same limits as the Wrights, the maximum Defendants would have recovered from Jackson's insurer would be $500,000. Had the Toyota Sienna been responsible for the accident, Defendants would've recovered a maximum of $500,000 under the bodily injury per occurrence limit in Plaintiff's policy. Here, the two policies combine to provide that same result—a total payout of $500,000, combining $100,000 from the tortfeasor and $400,000 in UIM coverage. This is the purpose of UIM coverage mandated by Kansas law: "to fill the gap" where uninsured or underinsured tortfeasors are involved. *O'Donoghue*, 66 P.3d at 828; *see also Rich v. Farm Bureau Mut. Ins. Co.*, 824 P.2d 955, 959 (Kan. 1992) ("The purpose of [K.S.A. § 40-284] is to provide the individual who is covered by the standard automobile liability policy with a right against his or her own insurer <u>equal to</u> that the insured would have against the uninsured or underinsured tortfeasor." (emphasis added)). Defendants' proposed calculation would more than fill the gap. It would give them more than they'd be able to recover under any other scenario.

Defendants also argue that this outcome means that "recovery for innocent injured [parties] decreases as the number of injured claimants and the severity of their injuries increase," which "cannot be the public policy of Kansas." Doc. 22 at 13-14. Regardless of whether it is the public policy, it is an unfortunate reality for accidents involving multiple individuals. Nearly all policies have "per occurrence" limits. The recoverable amounts inevitably decrease with each person over two involved. This is true for both primary and UIM coverage.

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Plaintiff's Motion for Summary Judgment (Doc. 13) is GRANTED. To the extent Defendants cross-move for summary judgment, that motion is DENIED.[12] The clerk shall enter judgment in favor of Plaintiff.

THE COURT FURTHER ORDERS that this case is closed.

IT IS SO ORDERED.

Dated: May 8, 2026                       /s/ Holly L. Teeter
                                         HOLLY L. TEETER
                                         UNITED STATES DISTRICT JUDGE

---

[12]  Defendants' response brief (Doc. 22) states it is also a cross-motion for summary judgment, though it was not docketed as a motion.

14